IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRICIA A.G.,[1] | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 21 C 05573 ) |
| KILOLO KIJAKAZI, | ) Magistrate Judge Beth W. Jantz ) |
| Acting Commissioner of Social Security, | ) ) |
| Defendant. | ) ) ) |

**MEMORANDUM OPINION AND ORDER**

  This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Patricia A.G.'s application for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [dkt. 13, Pl.'s Mot.] is granted, and the Commissioner's cross-motion for summary judgment [dkt. 14, Def.'s Mot.] is denied. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by her first name and the first initials of her last name.

**BACKGROUND**

I. **Procedural History**

On April 3, 2019, Plaintiff filed a claim for DIB, alleging disability since March 29, 2019, due to sciatica, spondylosis, vertigo, carpal tunnel, anxiety, degenerative osteoarthritis, right ankle ligament tears, multiple bulging discs, obesity, and narrowing of the spinal facets. [Dkt. 10-1, R. 191-92, 223.] Plaintiff's claim was denied initially and again upon reconsideration. [R. 86, 104.] Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held by telephone on October 29, 2020. [R. 16-41.] Plaintiff personally appeared by telephone and testified at the hearing and was represented by counsel. [R. 18, 21-37.] Vocational expert ("VE") Ronald Malik also testified. [R. 37-40.] On February 22, 2021, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. [R. 108-19.] The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner.

II. **The ALJ's Decision**

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. [R. 108-19.] The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of March 29, 2019. [R. 111.] At step two, the ALJ concluded that Plaintiff had the following severe impairments: cervical degenerative disc disease; lumbar degenerative disc disease with stenosis; left hip osteoarthritis; bilateral knee osteoarthritis, status-post total right knee arthroscopy; carpal tunnel syndrome, status-post release of the right upper extremity and status-post left thumb arthroplasty on the left thumb; right shoulder bursitis, tendinosis, and osteoarthritis, status-post arthroscopy; and obesity. [R. 111-12.] The ALJ concluded at step

2

three that Plaintiff's impairments, alone or in combination, do not meet or medically equal one of the Social Security Administration's listings of impairments (a "Listing"). [R. 113.] Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform less than a full range of light work, specifically that she could lift and/or carry and push and pull 20 pounds occasionally and 10 pounds frequently, she could frequently push and pull with the dominant right upper extremity and the bilateral lower extremities, and she could sit for 6 hours and stand and/or walk for 6 hours. [R. 113-18.] The ALJ further indicated that Plaintiff could not climb ladders, ropes, or scaffolds but could climb ramps and stairs occasionally, as well as balance, stoop, crouch, kneel, and crawl occasionally. [*Id.*] And the ALJ determined that Plaintiff could not work around hazards and could not tolerate more than occasional exposure to extreme cold. [*Id.*] At step four, the ALJ concluded that Plaintiff could perform her past relevant work as a nurse supervisor and nurse consultant. [R. 118.] Accordingly, because Plaintiff could perform her past relevant work, the ALJ found that she is not disabled under the Social Security Act. [R. 119.]

## DISCUSSION

### I.   Judicial Review

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or

combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.*, at 327.

The ALJ also has a basic obligation to develop a full and fair record, and to "build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837; *see also Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). Although the ALJ is not required to mention

4

every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind [his] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351).

## II.     Analysis

Plaintiff argues that the ALJ committed reversible error by: (1) improperly evaluating medical opinion evidence; (2) improperly evaluating Plaintiff's mental limitations and problems with stress; and (3) improperly evaluating Plaintiff's subjective symptoms. [Dkt. 13, Pl.'s Mem. at 3-16.][2] After reviewing the record and the briefs submitted by the parties, this Court concludes that the ALJ erred in assessing Plaintiff's mental RFC. Because this failure alone warrants remand, the Court need not reach Plaintiff's additional arguments.

Plaintiff argues that the ALJ erred by failing to account for Plaintiff's mental limitations and problems with stress in crafting the RFC. [Pl.'s Mem. at 10-13.] Plaintiff contends that the ALJ failed to incorporate into the RFC the mild limitations he found that Plaintiff had in (1) understanding, remembering, and applying information; (2) concentrating, persisting, or maintaining pace; and (3) adapting or managing herself. [*Id.*] The Court agrees with Plaintiff that the ALJ erred by neither incorporating into the RFC Plaintiff's mild limitations in these three areas, nor explaining why these mild limitations produced no functional restrictions that needed to be included in the RFC. This error requires remand.

---

[2] The Court refers to the parties' briefs by the page numbers at the top in the CM/ECF header throughout this decision.

The ALJ's sole discussion of Plaintiff's mental limitations came at step two, where the ALJ concluded that Plaintiff's major depressive disorder, panic disorder, adjustment disorder, and vertigo were non-severe impairments. [R. 111-12.] In doing so, the ALJ generally reviewed some of the evidence in the record as to each area of mental functioning but did not cite any specific records or medical opinion evidence. [*Id.*] For example, as to the ALJ's consideration of Plaintiff's limitations as to concentration, persistence, or pace, the following is the entirety of the ALJ's discussion:

> The next functional area addresses the claimant's ability to concentrate, persist, or maintain pace. For this criterion, the claimant has mild limitations. The claimant contended that she has limitations in completing tasks. On the other hand, the claimant said that she is also able to drive, prepare meals, watch TV, manage funds, and use the internet. Additionally, the record fails to show any mention of distractibility and an inability to complete testing that assesses concentration and attention.

[R. 112.] At the end of the ALJ's step two discussion of Plaintiff's mental impairments, the ALJ expressly noted:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental functional analysis.

[*Id.*] Notwithstanding the ALJ's statement that his step two discussion was "not a residual functional capacity assessment," the ALJ did not revisit Plaintiff's mental limitations throughout the rest of his opinion.

The ALJ failed to properly account in the RFC for the mild limitations that he found in the three functional areas—understanding, remembering, and applying information; concentrating, persisting, or maintaining pace; and adapting or managing herself. It is axiomatic

6

that "both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). This is true even if mental impairments "are non-severe and the limitations that they impose on the claimant's capabilities are minor." *Thomas G. v. Kijakazi*, No. 20-CV-5860, 2022 WL 4234967, at *4 (N.D. Ill. Sept. 14, 2022) (collecting cases). Time and time again, courts in this District have remanded ALJ opinions identifying non-severe mental impairments at step two that disappear without explanation when it comes time to craft the RFC before step four. *See e.g., Thomas G.*, 2022 WL 4234967, at 5 (Cummings, J.); *Kathy A. v. Kijakazi*, No. 20-CV-2387, 2022 WL 2758001, at *5 (N.D. Ill. July 14, 2022) (Cummings, J.); *Anthony W. v. Kijakazi*, No. 20 C 6209, 2022 WL 1062334, at *3 (N.D. Ill. Apr. 8, 2022) (Harjani, J.); *Judy D. v. Saul*, No. 17 C 8994, 2019 WL 3805592, at *4 (N.D. Ill. Aug. 13, 2019) (Schenkier, J.); *Iora P. v. Berryhill*, No. 18 C 3640, 2019 WL 1112272, at *4 (N.D. Ill. Mar. 11, 2019) (Rowland, J.); *Hearan v. Berryhill*, No. 17 C 0542, 2018 WL 3352657, at *3 (N.D. Ill. July 9, 2018) (Gilbert, J.).

      The ALJ here did what this line of cases indicates is impermissible: the ALJ determined at step two that Plaintiff had non-severe mental impairments that warranted mild limitations in (1) understanding, remembering, and applying information; (2) concentrating, persisting, or maintaining pace; and (3) adapting or managing herself, but the ALJ failed to discuss or even mention Plaintiff's mild mental limitations in crafting the RFC. The arguments the Commissioner offers to stave off remand are unavailing.

      First, the Commissioner characterizes the ALJ's analysis at step two as citing "ample evidence" in support of his findings that Plaintiff's mental impairments were non-severe and warranted only mild functional limitations. [Dkt. 15, Def.'s Mem. at 11-12.] Plaintiff does not

7

argue that the ALJ's analysis was lacking at step two as a ground for reversal, but the Court is troubled by the ALJ's lack of citation to any particular medical records and medical opinion evidence when evaluating Plaintiff's mental impairments. [*See* R. 111-12.] For instance, the ALJ did not discuss or rely on the state agency physician consultants' opinions concerning Plaintiff's mental limitations. [*See* R. 56-57 (on initial review, concluding that Plaintiff had mild limitations in concentration, persistence, or pace but no limitations in any other area); R. 95 (on reconsideration, concluding that Plaintiff had mild limitations in understanding, remembering, and applying information; concentrating, persisting, or maintaining pace; and adapting and managing herself).] Although the ALJ did reference Plaintiff's subjective reports and reports from treatment notes, he did so in a general fashion without citation to any specific records, making it difficult to know whether and to what extent the medical record supports his conclusions that Plaintiff had mild limitations in three of the four functional areas. [*See* R. 111-12.] Thus, the ALJ did not, as the Commissioner contends, fully explain his findings as to Plaintiff's mild limitations, nor explain why he was not including those limitations in the RFC.

Next, the Court also does not agree with the Commissioner that the ALJ offered any specific reasons—at step two or otherwise—for not incorporating any of Plaintiff's mild limitations into the RFC. [*See* Def.'s Mem. at 11-12.] This case is distinguishable from *Rick M. v. Saul*, No. 20-cv-4369, 2021 WL 2588762, at *5-6 (N.D. Ill. June 24, 2021), on which the Commissioner relies, because in that case the ALJ did in fact discuss all of that plaintiff's non-severe mental impairments during the RFC analysis, even if he "could have been more explicit about why he omitted mental limits from [plaintiff's] RFC." Here, the ALJ never discussed Plaintiff's mental impairments in his RFC analysis, leaving the Court without any indication as to why he imposed no mental limitations in the RFC. [*See* R. 113-18.]

8

In any event, even if the ALJ had adequately given reasons at step two, the Commissioner cannot rely on the ALJ's step two discussion to justify the RFC because the ALJ expressly stated that his step two discussion was not an RFC assessment. The ALJ noted that his step two analysis was "not a residual functional capacity assessment" and indicated that "[t]he mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment." [R. 112.] It is true, as the Commissioner points out, that ALJ opinions must be read holistically, and the failure to repeat an analysis from step two or three when crafting the RFC before step four is typically not a proper basis for remand. *See Zellweger v. Saul*, 984 F.3d 1251, 1252 (7th Cir. 2021) ("[The sequential process is not so rigidly compartmentalized, and nothing in the *Chenery* doctrine prohibits a reviewing court from reading an ALJ's decision holistically."). But in this instance, where the ALJ expressly noted that his step two analysis did not constitute an RFC assessment, and that an RFC assessment required a more detailed analysis, "the Court will not overreach and ignore the ALJ's own words in an effort to read the opinion as a whole." *Anthony W.*, 2022 WL 1062334, at *3; *see also David K. v. Kijakazi*, No. 20-CV-1743, 2022 WL 2757695, at *5 (N.D. Ill. July 14, 2022) (same). The ALJ was obligated to explain either how the RFC "incorporate[d] restrictions caused by Claimant's mild mental limitations," or, alternatively, why "the ALJ believed that the mild mental limitations did not merit a non-exertional limitation in the RFC." *Viviana R. v. Kijakazi*, No. 19-CV-07419, 2022 WL 3354840, at *5 (N.D. Ill. Aug. 12, 2022). The ALJ's opinion contains no such explanation, notwithstanding the ALJ's promise of one.

The Commissioner suggests that it is incorrect to say that an ALJ must always include mental restrictions for non-severe impairments, [Def.'s Mem. at 14-15], but this response attacks a straw man. "Even if a mild limitation finding at step two does not necessarily equate to any

9

RFC limitation, the ALJ must still affirmatively *evaluate* the effect such mild limitations have on the claimant's RFC." *Kathy A.*, 2022 WL 2758001, at *4 (cleaned up). It is the ALJ's failure to conduct such an evaluation—and not the ALJ's failure to find any limitations—that requires remand.

Finally, this type of error is particularly problematic when, as here, an ALJ finds that a plaintiff can perform past skilled work, [R. 118]. *See, e.g., Anthony W.*, 2022 WL 1062334, at *4 ("The ALJ's error in the present case is particularly problematic because the VE found that Anthony could perform his previous work as an automobile salesperson and a household appliance salesperson; jobs that The Dictionary of Occupational Titles ("DOT") lists as skilled and semi-skilled employment."); *Iora P.*, 2019 WL 1112272, at *4 ("This error is particularly problematic here, as the VE found that the ALJ's RFC would permit Plaintiff to perform her past skilled position as a senior financial advisor."). The Court cannot say that the ALJ's error was harmless.

"On remand, the ALJ must either incorporate into the RFC non-exertional limitations that account for [Plaintiff's] mild limitations in" (1) understanding, remembering, and applying information; (2) concentrating, persisting, or maintaining pace; and (3) adapting or managing herself, "*or* explain why such limitations are unnecessary." *Kathy A.*, 2022 WL 2758001, at *5. Because the ALJ's failure to adequately evaluate Plaintiff's mental limitations vis a vis the RFC requires remand, the Court need not address Plaintiff's remaining arguments. The Administration should not, however, construe the Court's silence on the remaining issues as an indication that the ALJ's initial adjudication was appropriate or not with respect to those issues.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment [13] is granted, and the Commissioner's cross-motion for summary judgment [14] is denied. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**

Date: 3/29/2023

BETH W. JANTZ
United States Magistrate Judge